**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————— :
                                  :
ANIBAL ROMAN,                     :     CIVIL ACTION
                                  :
          Petitioner              :
                                  :
     v.                           :     NO.  08-0715
                                  :
SUPERINTENDENT R. SOBINA, et. al., :
                                  :
          Respondents             :
———————————————————————— :

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

          Presently before the Court is a pro se Petition for
Writ of Habeas Corpus filed by the Petitioner, Anibal Roman
("Petitioner"), pursuant to 28 U.S.C. section 2254.  Petitioner
is currently incarcerated in the State Correctional Institution
in Marienville, Pennsylvania.  For the reasons that follow, it is
recommended that the Petition should be denied with prejudice and
dismissed without an evidentiary hearing.

**I.     FACTS AND PROCEDURAL HISTORY.**[1]

          On October 21, 2002, following a bench trial before the
Honorable Pamela Pryor Dembe, Petitioner was found guilty of
murder in the first degree, violating the Uniform Firearms Act
("VUFA"), and possessing an instrument of crime ("PIC").[2]  On

_____

          [1]    This information is taken from the Petition for Writ of Habeas
Corpus, the Response thereto, and the attachments to those pleadings.

          [2]    The Superior Court of Pennsylvania set forth the following
relevant facts and procedural history:

that same date, Petitioner received a life sentence for the murder conviction and concurrent sentences of two and one half to five years for the VUFA and PIC convictions.

The Petitioner timely filed a direct appeal with the Pennsylvania Superior Court. In so doing, Petitioner claimed that (1) the trial court erred in denying the motion to suppress his confession; (2) the evidence was insufficient to support the verdict; and (3) he was entitled to a new trial based on the "recantation" of racial motive by Melissa Bianco. Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table); Response, Ex. B at 2. By memorandum decision entered October 14, 2003, the Superior Court rejected Petitioner's claims,[3] and affirmed the judgment of sentence of the trial court. Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table); Response, Ex. B.

---

On January 25, 2001, Robert Rivers was shot ten times at close range in the face, chest, back, and abdomen, while seated in his car in a parking lot. He died of his injuries several days later, and [Petitioner] was charged with his murder. During [Petitioner's] bench trial, the Commonwealth's evidence supporting [Petitioner's] guilt included the following. [Petitioner] confessed to shooting the victim, who was the boyfriend of [Petitioner's] ex-girlfriend and who [Petitioner] believed had struck his child. A sweatshirt found at the crime scene was stained with [Petitioner's] blood, as revealed by DNA analysis. Analysis of [Petitioner's] transpass indicated that he had traveled by public transportation to the vicinity of the crime scene twice on the day of the murder; one of these trips was made in the evening, coinciding with the time of the murder.

Commonwealth v. Roman, 931 A.2d 52 (Pa. Super. 2007)(table); Response, Ex. G at 1-2.

[3]     The Superior Court found that Petitioner's first two claims were meritless and that his third claim was a matter that procedurally could not be raised until post-conviction relief proceedings were initiated. Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table); Response, Ex. B.

Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court which was denied on June 17, 2004. Commonwealth v. Roman, 853 A.2d 361 (Pa. 2004)(table).

Petitioner timely filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"). See 42 Pa.C.S.A. § 9541. Counsel was appointed and an amended petition was filed.[4] The PCRA court dismissed the petition on April 14, 2006. Petitioner appealed to the Superior Court.[5] The Superior Court affirmed the PCRA court on June 25, 2007. Commonwealth v. Roman, 931 A.2d 52 (Pa. Super. 2007)(table); Response, Ex. G. Thereafter, Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  The Supreme Court declined review on January 30, 2008. Commonwealth v. Roman, 944 A.2d 757 (Pa. 2008)(table).

---

[4]    Petitioner presented two claims: 1) whether trial counsel was ineffective for failing to pursue alibi evidence; 2) whether he was entitled to a new trial based on the recantation testimony of Melissa Bianco. Response, Ex. D.

[5]    Petitioner presented the same two claims to the PCRA court and the Superior Court. Response, Ex. D; Response Ex. G at 2.  In addition, however, Petitioner filed a pro se brief wherein he sought to "amend" the counseled brief that had already been filed with the Superior Court.  In so doing, Petitioner asserted the following additional claims: (1) ineffective assistance of counsel for failure to call witnesses; (2) ineffective assistance of counsel for failure to object to prosecutor's closing argument; (3) ineffective assistance of counsel for failure to file post-sentence motions objecting to the prosecutor's closing argument; (4) the police did not have probable cause to arrest; and (5) prosecutorial misconduct during closing argument.  Relying on Commonwealth v. Albrecht, 554 Pa. 31, 62, 720 A.2d 693, 709 (1998), the Superior Court determined that because it may prohibit the filing of pro se briefs by appellants represented by counsel on appeal, it declined to consider Petitioner's pro se brief.

Petitioner filed the instant <u>pro se</u> Petition for Writ of Habeas Corpus on February 14, 2008.[6]  On April 9, 2008, this case was referred by the Honorable Paul S. Diamond for preparation of a Report and Recommendation.  Petitioner also submitted an "Application for Stay in Abeyance", which was filed by the court on April 18, 2008.[7]  The Response to the Petition

---

[6]      A Memorandum of Law, signed by Petitioner on February 8, 2008, presumably was sent to the Clerk's Office in conjunction with the Petition for Writ of Habeas Corpus.  We advised the Clerk's Office to formally file this Memorandum on April 18, 2008.

[7]      Petitioner's Application for Stay in Abeyance was signed on February 8, 2008 and presumably was sent to the Clerk's Office in conjunction with his Petition for Writ of Habeas Corpus.  We advised the Clerk's Office to formally file this Application on April 18, 2008. In his application for stay, Petitioner asks this Court to stay his Petition because it contains three exhausted claims and three unexhausted claims.  Respondents filed a Response to Petitioner's Application for Stay in Abeyance on June 3, 2008.

        Based on our review of the Response and case law cited in support thereof, we agree with Respondents and recommend that Petitioner's application for stay be denied.  More specifically, we note that under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. § 9541, a petition for PCRA relief must be brought within one year of final judgment on a petitioner's case.  A judgment becomes final at the conclusion of direct review by the state court or the United States Supreme Court, or at the expiration of the time for seeking such review. 42 Pa.C.S.A. § 9545(b)(3).  In this matter, Petitioner's judgment of sentence became final on September 15, 2004, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal.  No PCRA petitions are currently pending before the state court.  Accordingly, any attempt to file an additional PCRA petition would be time-barred.

        As the Pennsylvania Supreme Court has observed, there are three narrow exceptions to the one-year time limitation for seeking PCRA relief. <u>Commonwealth v. Gamboa-Taylor</u>, 753 A.2d 780, 783 (Pa. 2000).  <u>See also</u> <u>Commonwealth v. Peterkin</u>, 722 A.2d 638, 643 (Pa. 1999) (stating that "the exceptions to [PCRA] filing period encompass government misconduct, after-discovered evidence, and constitutional changes").  However, even if a petitioner qualifies for one of these narrow exceptions, it must still be brought within sixty days.  The Supreme Court noted that

            [W]hen a PCRA petition is not filed within one year of the
            expiration of direct review, or not eligible for one of the three
            limited exceptions, or entitled to one of the exceptions, but not
            filed within 60 days of the date that the claim could have been
            first brought, the trial court has no power to address the
            substantive merits of a petitioner's PCRA claims.

<u>Commonwealth v. Gamboa-Taylor</u>, 753 A.2d 780, 783 (Pa. 2000).

was filed on September 8, 2008.

The Petition before this Court seeks a determination of the following issues: (1) whether the trial court erred in denying Petitioner's motion to suppress his confession (Memorandum, p. 2-13); (2) whether the prosecutor committed misconduct by using the alleged "perjured" testimony of Melissa Bianco (Memorandum, p. 14-20); (3) whether Petitioner was entitled to a new trial based on the recantation testimony of Melissa Bianco (Memorandum, p. 21-26); (4) whether the prosecutor committed a <u>Brady</u>[8] violation when she withheld evidence of an alleged "crime scene" video (Memorandum, p. 27-28); and (5) whether the evidence was insufficient to support the verdict (Memorandum, p. 29-33).  In his application for stay, Petitioner asserts an additional claim that counsel was ineffective for failing to call a medical witness.  Application, p. 1.

---

In this matter, Petitioner signed his Petition on February 8, 2008, which was then filed on February 14, 2008.  In his Petition, and in his application for stay, Petitioner presents three claims that he wishes to exhaust in state court.  Before he filed his Petition, however, he could have attempted to present those three claims in a second PCRA petition.  As Respondents note, the Petition was filed nearly nine months ago and the sixty day time limit has certainly lapsed by now, if it hadn't already lapsed prior to the Petition filing.  Moreover, Petitioner offers no explanation as to why he was unable to present these three claims in prior state proceedings, so the sixty day window for exceptions is not even implicated.

For the foregoing reasons and for the reasons expressed by Respondents in their responsive brief, we respectfully recommend that Petitioner's Application for Stay in Abeyance be denied.

[8]   <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), stands for the proposition that the suppression of evidence favorable to an accused is itself sufficient to amount to a denial of due process.

Respondents deny that Petitioner is entitled to a grant of the Petition because they claim that his allegations are either without merit or are procedurally defaulted.  Thus, Respondents contend that the Petition should be dismissed with prejudice.

## II.   __STANDARD OF REVIEW__.

### A.   **HABEAS CORPUS PETITIONS.**

A habeas corpus petition can only succeed if Petitioner can show that (i) the state court's resolution of his claim was contrary to, or an objectively unreasonable application of, clearly established federal law and (ii) his claim is exhausted. See 28 U.S.C. § 2254(d)(1); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996).

An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable.  Williams v. Taylor, 529 U.S. 362, 407 (2000).  Clearly established federal laws are the holdings, not the dicta of the Supreme Court.  Id. at 390.

### B.   **EXHAUSTION AND PROCEDURAL DEFAULT.**

Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition.  See Anderson v. Harless, 459 U.S. 4, 7 (1982).  If a petition's claims have not been

6

exhausted, and a petitioner is time-barred from presenting those claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits.  28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  However, a procedurally defaulted claim may still succeed where a petitioner can show either (i) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 749 (1991).  Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002)(quoting Coleman, 501 U.S. at 753).  Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage.  United States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001)(quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. 298, 327 (1995); Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir. 2001).  The burden is on

the petitioner to show that "a constitutional violation has
probably resulted in the conviction of one who is actually
innocent."  Schlup, 513 U.S. at 327.

III. **DISCUSSION**.

   A.   **WHETHER THE TRIAL COURT ERRED IN DENYING PETITIONER'S
        MOTION TO SUPPRESS HIS CONFESSION.**

        Petitioner's first claim is that the trial court erred
in denying his motion to suppress his confession.  This claim
arises out of his allegation that he was denied medication for
his kidney condition, thereby rendering his confession
involuntary.  Petitioner exhausted this claim in his direct
appeal before the Pennsylvania Superior Court, and, as a result,
it is properly before this Court on habeas review.

        In reviewing this claim, the Superior Court first
considered the evidence presented during the suppression hearing:

          Detective Brian Peters testified that the January
          30, 2001, interview with [Petitioner] started at 7:05
          pm and ended at 9:25 pm. [Petitioner] was given the
          opportunity to review the written statement and make
          changes before signing it. Before questioning began,
          [Petitioner] was advised of his *Miranda* rights. He was
          not threatened or coerced in any way. Detective Peters
          testified that he had been told that [Petitioner] had
          been in Nazareth Hospital for a kidney problem.

          When [Petitioner] was brought to the Roundhouse
          from C.F.C.F., he was taken directly to the interview
          room rather than languishing in a holding cell.
          Detective Peters testified that he did not act sick. He
          was offered food and drink, but refused both of them.
          He was not handcuffed while he gave his statement.
          While he was not asked if he had to use the bathroom []
          he never indicated the need to do that or to take any
          medicine. Robert River[s] had not died at this point;

8

he was still a patient at Jefferson Hospital.

> [Petitioner] testified at the suppression hearing
> that he had undergone a kidney transplant due to a rare
> kidney disease called Nephrosclerosis, and that he took
> anti-rejection medication and Lopressor for his
> condition, [Petitioner] claimed that Detective Peters
> withheld his medication from him to make him confess.
> He claimed that during the interview, he was coughing
> up blood and in great pain. The Lower Court did not
> find his testimony to be credible. Moreover, in his
> 1925(b) statement, [Petitioner] asserts that the Lower
> Court failed to consider that the medication he was
> taking for his condition rendered his confession
> involuntary[.] To these contradictory arguments must be
> added the evidence that [Petitioner] had been admitted
> to Nazareth Hospital for the flu and not kidney disease
> as he had earlier claimed[.]
>
> On this basis, the Lower Court found that there
> was no evidence presented which would support a finding
> that [Petitioner's] statement was involuntary or
> unreliable.
>
> [Petitioner's] initial statement, in which he
> denied being the shooter, does not [render] the second
> statement unreliable as a matter of law. The lower
> court found [Petitioner's] testimony to be not
> credible. It is within the sole province of a
> suppression court to weigh credibility of witnesses.
> ***Commonwealth v. Valentin***, 748 A.2d 711 (Pa. Super.
> 2000)[.]

Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table);

Response, Ex. B, at 4-5.  After noting the standard of review

applicable to a ruling of a suppression court, the Superior Court

continued:

> "The determination of whether a confession is
> voluntary is a conclusion of law and, as such, is
> subject to plenary review."  The test for determining
> the voluntariness of a confession and the validity of a
> waiver looks to the totality of the circumstances
> surrounding the giving of the confession.  Some of the
> factors to be considered include: the defendant's

physical and psychological state; the conditions
attendant to the detention; the attitude exhibited by
the police during the interrogation; and any other
factors which may serve to drain one's powers of
resistance to suggestion and coercion.  In determining
voluntariness, the question is not whether the
defendant would have confessed without interrogation,
but whether the interrogation was so manipulative or
coercive that it deprived the defendant of his ability
to make a free and unconstrained decision to confess.
By the same token, the law does not require the
coddling of those accused of crime.  One such need not
be protected against his own innate desire to unburden
himself.

*Commonwealth v. Paxton*, 821 A.2d 594, 598 (Pa. Super.
2003)(citations omitted).

The Supreme Court, has, on a number of occasions,
considered the legality of confessions obtained
when the accused is suffering from medical
infirmities and has found voluntariness based
solely on the credible testimony of the
interrogating officer.  *See, e.g. Commonwealth v.
Cornish*, 471 Pa. 256, 370 A.2d 291
(1977)(defendant suffering from drug withdrawal;
officer's testimony that defendant "appeared to
comprehend and understand everything which was
said to him", held to establish voluntariness);
*Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103
(1972)(defendant intoxicated; officers testified
defendant was "alert and responsive, and at no
time failed to understand the nature of the
interrogation or the questions asked of him";
Court found confession voluntary); *Commonwealth v.
Moore*, 454 Pa. 337, 311 A.2d 620 (1972)(defendant
suffering from heroin withdrawal; officers
testified he seemed "normal, alert, and
responsive; Court found voluntariness).

*Commonwealth v. Hunt*, 398 A.2d 690, 693 (Pa. Super.
1979).  After careful review of the record, we conclude
that the suppression court's findings are supported by
the record.  The credible testimony of Detective Peters
alone was sufficient to substantiate the suppressions
court's finding of voluntariness.  Accordingly, we find
that the suppression court did not err in denying
Roman's motion to suppress his statements.

10

Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table);

Response, Ex. B, at 5-6.

   In this matter, and as noted by Respondents, the trial court had the exclusive opportunity to observe the witnesses at the suppression hearing, and make specific credibility determinations as to each, when it rendered its findings of fact. Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1); Sumner v. Mata, 449 U.S. 539, 547 (1981)(the presumption of correctness applies to the factual determinations of both trial and appellant state courts).  The burden is on Petitioner to rebut this presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

   Based on our review of this matter, we agree with Respondents insofar as Petitioner has failed to present clear and convincing evidence that the Superior Court's factual determination, *i.e.*, that the "credible testimony of Detective Peters alone was sufficient to substantiate the suppressions court's finding of voluntariness", was erroneous.  To the contrary, Petitioner merely recites his own testimony from the suppression hearing, which testimony has already been adjudged unbelievable by the Superior Court.

   The Superior Court's rejection of Petitioner's suppression claim was not objectively unreasonable.   Because

11

this determination, pursuant to Pennsylvania law, was neither contrary to nor an unreasonable application of clearly established federal law, Petitioner cannot be granted relief via habeas review.  28 U.S.C. § 2254(d).  This claim must be denied.

**B.    WHETHER THE PROSECUTOR COMMITTED MISCONDUCT BY USING THE ALLEGED "PERJURED" TESTIMONY OF MELISSA BIANCO.**

Petitioner avers prosecutorial misconduct and alleges that the prosecutor knowingly presented the "perjured" testimony of Melissa Bianco at trial.  In his application for stay, however, Petitioner admits that this claim was not exhausted in state court.  Application, p. 1.  Petitioner further alleges that his failure to exhaust this claim renders his Petition "mixed" and constitutes grounds for this Court to hold the matter in abeyance while he returns to state court to exhaust this claim. As explained *infra* in footnote seven, however, state review is now foreclosed.  Therefore, this claim is procedurally defaulted and unreviewable.

Because Petitioner did not present this claim to the state court, he did not exhaust his state court remedies with respect to this claim.  Petitioner should have alerted the state courts to the fact that he was asserting this claim under the United States Constitution.[9]  Duncan v. Henry, 513 U.S. 364, 365-

---

[9]    State prisoners are required to give state courts a fair "opportunity to pass upon and correct' alleged violations" of federal constitutional rights "[b]efore seeking a federal writ of habeas corpus." Baldwin v. Reese, 541 U.S. 27, 29 (2004)(quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

366 (1995).  Petitioner is now time-barred from presenting this claim to the state court.  Thus, the claim is technically exhausted, but review on the merits is procedurally barred.  See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

If a petitioner's claims have been procedurally defaulted, a federal court cannot review these claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To satisfy the cause and prejudice requirement, courts have held that cause exists when a petitioner demonstrate[s] "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002)(quoting Coleman, 501 U.S. at 753).  The cause must be "something that cannot fairly be attributed to the petitioner." Johnson v. Klem, No. CIV.A. 04-410, 2004 WL 1175575, at *2 (E.D. Pa. May 26, 2004)(quoting Coleman, 501 U.S. at 753).  Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage.  U.S. v. Rodriguez, 153 F. Supp.2d 590, 594 (E.D. Pa. 2001)(quoting U.S. v. Frady, 456 U.S. 152, 170

13

(1982)).

As an alternative to showing cause and prejudice, a petitioner must show that failure to review the federal habeas claim will result in a "miscarriage of justice." Johnson, 2004 WL 1175575, at *2 (citing Werts v. Vaughn, 228 F.2d 178, 193 (3d Cir. 2000)).  To show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted.  Cristin, 281 F.3d at 412 (citing Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir. 2001)). To establish the requisite probability of actual innocence, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).

In this matter, Petitioner fails to address his default of this claim.  Because Petitioner has failed to demonstrate cause or that failure to consider this claim will result in a fundamental miscarriage of justice,[10] we are precluded from review of this remaining claim and it must be denied.

---

[10]     To the extent that Petitioner is attempting to use the recantation affidavit of Melissa Bianco as grounds to demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice, the issue is discussed in the next section.

14

**C.   WHETHER PETITIONER IS ENTITLED TO A NEW TRIAL BASED ON THE RECANTATION TESTIMONY OF MELISSA BIANCO.**

Petitioner's allegation that he is entitled to a new trial based on alleged recantation testimony of Melissa Bianco is essentially, as Respondents note, an allegation of actual innocence.  Claims of actual innocence based on newly discovered evidence, however, "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993)(quoting Townsend v. Sain, 372 U.S. 293, 317 (1963)("the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus").  As a result, Petitioner's claim is not reviewable as an independent constitutional violation.

To the extent that Petitioner seeks to use this evidence in order to demonstrate a fundamental miscarriage of justice so as to excuse his procedural default of other claims, we conclude that Petitioner is unable to meet his burden.  As explained above, in order to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted.  Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002)(citing Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir.

2001)).  To establish the requisite probability of actual

innocence, the petitioner must present "new reliable evidence -

whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence - that was not

presented at trial" showing that "it is more likely than not that

no reasonable juror would have convicted him in light of the new

evidence."  Schlup v. Delo, 513 U.S. 298, 327 (1995).

We note that the Superior Court has already reviewed

Ms. Bianco's alleged recantation in the context of Petitioner's

PCRA petition and concluded that it did not amount to exculpatory

evidence.  We agree with the Superior Court's analysis of this

issue.  More specifically, the Superior Court stated that:

> [Petitioner] contends that he is entitled to a new
> trial because a Commonwealth witness, Melissa Bianco,
> [Petitioner's] ex-girlfriend, recanted, via an
> affidavit sworn on May 4, 2005, the portion of her
> trial testimony that suggested [Petitioner's] shooting
> of the victim may have been racially motivated.
> [Petitioner] invokes 42 Pa.C.S.A. § 9543(a)(2)(vi),
> under which a petitioner may be entitled to relief if
> he can plead and prove that his conviction or sentence
> resulted from "[t]he unavailability at the time of
> trial of exculpatory evidence that has subsequently
> become available and would have changed the outcome of
> the trial if it had been introduced." [Petitioner's]
> assertion has no merit.
>
> Our precedent has established that a
> recantation and admission of perjury falls into the
> category of after-discovered evidence to which Section
> 9543(a)(2)(vi) may apply.  *See Commonwealth v. D'Amato*,
> 579 Pa. 490, 519, 521-22, 856 A.2d 806, 823, 825
> (2004); *Commonwealth v. Bond*, 572 Pa. 588, 615-16, 819
> A.2d 33, 49 (2002); *Commonwealth v. Loner*, 836 A.2d
> 125, 135 (Pa. Super. 2003)(*en banc*).  However, as our
> Supreme Court has expressly held, after-discovered

16

evidence that is not exculpatory can provide no basis for PCRA relief under Section 9543(a)(2)(vi), as a matter of law. **Bond, supra** at 615, 819 A.2d at 49.

Our Supreme Court has also cautioned that recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." **D'Amato, supra** at 522, 856 A.2d at 825 (2004)(citation omitted); **see also Loner, supra** at 135 ("Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury.")(citation omitted).

In the instant case, Ms. Bianco has recanted only one aspect of her testimony, *i.e.*, the claim that [Petitioner] may have had particular animosity against the victim because of his race. Notably, Ms. Bianco, who is [Petitioner's] ex-girlfriend and the mother of his child, has *not* retracted her claim that [Petitioner] did not want her to be with other men. She has retracted *only* her statement that [Petitioner] *especially* did not want her to date a *black* man. She now claims that she added the racial aspect to her testimony at the behest of the prosecutor.[FN]

> [FN] We note that the search warrant for [Petitioner's] apartment, prepared the day after the murder, indicated that Ms. Bianco had told the investigating police officers that [Petitioner] had threatened her with regard to her dating the victim and had made comments that he did not want her dating a black man.

The PCRA court determined that, even if it were to find Ms. Bianco's recantation credible, the new evidence would not produce a different verdict. (Trial Court Opinion at 9). We agree with the trial court's assessment.

Ms. Bianco's recantation does *not* constitute exculpatory evidence that would have changed the outcome of the trial, as required by Section 9543(a)(2)(vi). In fact, Ms. Bianco's recantation does not even *suggest* that [Petitioner] is innocent of the crime. [Petitioner's] contention that without the

17

> racial aspect of Ms. Bianco's testimony the
> Commonwealth would have had no motive for the murder is
> completely baseless. The Commonwealth offered two
> motives for the murder: [Petitioner's] jealousy that
> his ex-girlfriend was seeing another man and an
> allegation that the victim had struck [Petitioner's]
> son. Neither of these motives was undermined by Ms.
> Bianco's recantation. Furthermore, Ms. Bianco's
> recantation is totally irrelevant with regard to the
> overwhelming evidence that supports [Petitioner's]
> conviction, *i.e.*, his confession; the sweatshirt found
> near the crime scene bearing his blood, as revealed by
> DNA analysis; and evidence of his movements on public
> transportation that placed him near the scene of the
> crime at the time of the crime. We conclude that Ms.
> Bianco's recantation cannot be construed as
> exculpatory, and hence that the trial court did not err
> in declining to hold a hearing regarding such evidence.

Commonwealth v. Roman, 931 A.2d 52 (Pa. Super. 2007)(table);

Response, Ex. G, p. 7-9.

Because this claim does not constitute an independent
federal ground for relief and otherwise does not qualify to
excuse his procedural default of certain claims,[11] the claim is
meritless and must be denied.

    **D.**    **WHETHER THE PROSECUTOR COMMITTED A <u>BRADY</u> VIOLATION BY
WITHHOLDING EVIDENCE OF AN ALLEGED "CRIME SCENE" VIDEO.**

Petitioner contends that the Commonwealth withheld
evidence of a video which he alleges depicted the crime scene.
Petitioner admits that he failed to present this claim in state
court. Application, p. 1. As explained *infra* in footnote seven
and section B, state review is now foreclosed. Therefore, this

---

[11]    Further, we agree with Respondents in that any claim of "actual
innocence" by Petitioner is particularly hypocritical in light of the
remorseful comments made by him at sentencing in an effort to avoid the death
penalty. <u>See</u> Response, p. 12-13.

claim is procedurally defaulted and unreviewable.

We note further that Petitioner has known about this evidence since the Commonwealth responded to his PCRA petition. Memorandum, p. 27.  At that time, Petitioner could have amended his PCRA petition to include this claim.  He failed to do so. Petitioner knew about the claim, but failed to present it during state court proceedings.  At present, any attempt to file an additional PCRA petition would be time-barred.  The claim is, as a result, defaulted and it cannot be reviewed.[12]

Petitioner fails to address his default of this claim. Because Petitioner has failed to demonstrate cause or that failure to consider this claim will result in a fundamental miscarriage of justice, we are precluded from review of this remaining claim and it must be denied.

---

[12]   Moreover, we agree with Respondents that this claim is also meritless.  More specifically, Respondents state

> In the police 75-49 report, there is a reference to a "CCTV tape obtained from Joe Forkin VP of operations, Penns Landing corporation, containing footage of the area near [the] crime scene at the time of the shooting." A couple of things are clear from the notation. First, the video is not of the crime scene, but of the area near the crime scene, which was most likely not helpful to either the prosecution's or the defense's case. Secondly, the defense was told that there was a video tape. The discovery letter provided by petitioner as an exhibit to his habeas petition indicates that the Commonwealth provided the defense with a copy of the "Police 75-49's." The police report would have provided the defense notice of the existence of the video and then - as with any physical evidence or photos - the defense would have been given the opportunity to review the materials if appropriate.

Response, at 15.

**E.   WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT PETITIONER'S FIRST DEGREE MURDER CONVICTION.**

Petitioner claims that the evidence presented at trial was insufficient to support his first-degree murder conviction. Petitioner exhausted this claim in his direct appeal before the Pennsylvania Superior Court, and, therefore, it is properly before this Court on habeas review.

The standard of review for challenges to the sufficiency of the evidence on habeas review was set forth in Jackson v. Virginia, 443 U.S. 307, 316 (1979), where the Supreme Court explained:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt . . . . Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-319. Review of the evidence must be based upon state law; that is, the ultimate question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law. Id. at 324 n.16.

In order to prove first degree murder under Pennsylvania law, the prosecution had to show that Robert Rivers was unlawfully killed, the Petitioner committed the killing, and the killing was committed with malice and the specific intent to

kill.  18 Pa. C.S.A. § 2502(a); Commonwealth v. Weiss, 776 A.2d
958, 963 (Pa. 2001)(citing Commonwealth v. Hall, 701 A.2d 190,
196 (Pa. 1997)).  Malice and intent to kill may be inferred from
use of a deadly weapon upon a vital part of the victim's body.
Id. at 8 (citing Commonwealth v. Walker, 656 A.2d 90, 95 (Pa.
1995), Commonwealth v. Overby, 836 A.2d 20, 22 (Pa. 2003), and
Commonwealth v. Lee, 585 A.2d 1084, 1088 (Pa. Super. 1991)).

     Here, the Pennsylvania Superior Court's determination
that the evidence adduced at trial was sufficient to support the
first-degree murder conviction was in no way contrary to, or an
unreasonable application of the Jackson standard.  In reviewing
this claim, the Superior Court stated the following:

> Murder of the first degree is defined in 18
> Pa.C.S.A. § 2502(a) as "[a] criminal homicide . . .
> committed by an intentional killing."  Intentional
> killing is defined in 18 Pa.C.S.A. § 2502(d) as
> "[k]illing by means of poison, or by lying in wait, or
> by any other kind of willful, deliberate and
> premeditated killing."
>
> The Septa transpass evidence established that, on
> the day of the murder, Roman traveled on two occasions
> to the general vicinity of the crime scene. N.T.,
> 10/21/02, at 30-31. DNA evidence established that
> Roman's blood was on the sweatshirt found at the crime
> scene. *Id.* at 89. "Specific intent to kill may be
> inferred from the use of a deadly weapon upon a vital
> part of the victim's body." ***Commonwealth v. Bond***, 652
> A.2d 308, 311 (Pa. 1995) (citation omitted). Rivers had
> been shot ten times. This included shots to Rivers'
> face, chest, back, and abdomen, N.T., 10/21/02, at 94,
> which was certainly sufficient to infer a specific
> intent to kill. Further, the testimony reflected that
> Roman confessed to shooting Robert Rivers, the
> boyfriend of his ex-girlfriend with whom he had a
> child, because he believed that Rivers had hit his

child. *Id.* at 63. Roman admitted that he obtained the gun approximately five days before shooting Rivers for the purpose of shooting him. *Id.* at 68. In reviewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence and testimony presented at trial was sufficient to prove beyond a reasonable doubt that Roman had the intent to kill Rivers and that the crime was premeditated.

Further, Roman contends that the evidence was insufficient to sustain his conviction due to inconsistencies in the evidence including the identification of the killer.  Brief for Appellant, at 27.  We do not agree.  "A mere conflict in testimony does not render evidence insufficient.  The fact that there are some inconsistencies in the witnesses' testimony is not alone sufficient to destroy the Commonwealth's case or to render the evidence insufficient to support the verdict."  ***Commonwealth v. Long***, 624 A.2d 200, 208 (Pa. Super. 1993)(citations omitted).  "[T]he determination of the credibility of those witnesses was the function for the fact finder, who was free to believe all, part, or none of the evidence."  *Id.* (citation omitted).  Thus, sufficient evidence existed to conclude that Roman committed murder of the first degree.

Commonwealth v. Roman, 839 A.2d 1161 (Pa. Super. 2003)(table);

Response, Ex. B, at 6-8.

Under AEDPA, review for sufficiency of the evidence means a determination of whether the state court disposition was an objectively unreasonable application of the Jackson standard. See Williams, 529 U.S. at 379-390.  The Superior Court's rejection of Petitioner's sufficiency claim was not objectively unreasonable under Jackson because reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. Because this rejection, pursuant to Pennsylvania law, was neither

contrary to nor an unreasonable application of clearly

established federal law, Petitioner cannot be granted relief via

habeas review.  28 U.S.C. § 2254(d).  This claim must be denied.

### F.   WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL A MEDICAL WITNESS.

Finally, as noted in his application for stay,

Petitioner contends that counsel was ineffective for failure to

call a medical witness.  This allegation was not contained in his

Petition and we note that Petitioner has failed to provide any

factual averments or case law to support this allegation.

Moreover, Petitioner admits that this claim was not presented to

the state courts.  Application, p. 1.

As Respondents correctly aver, it is Petitioner's

burden to articulate his allegations in a clear and direct

manner.  Response, p. 18.  See Zettlemoyer v. Fulcomer, 923 F.2d

284, 298 (3d Cir. 1991), cert. denied, 502 U.S. 902

(1991)(petitioner could not meet his burden to show that counsel

made errors so serious that his representation fell below an

objective standard of reasonableness based on vague and

conclusory allegations that some unspecified and speculative

testimony might have established his defense).  See also Mayberry

v. Petsock, 821 F.2d 179, 187 (3d Cir. 1987), cert. denied, 484

U.S. 946 (1987)(petitioner's vague and general allegations fail

to make sufficient showing to justify relief).  Because

Petitioner fails to assert which counsel was presumably

23

ineffective or which medical witness should have been called, *inter alia*, this claim is impermissibly vague and incognizable.

Setting aside the vagueness issue, we conclude, as in sections B and D *supra*, that this claim is nonetheless procedurally barred because Petitioner failed to present it to the state courts and is now foreclosed from doing so.  In addition, Petitioner does not address his default of this claim.  Nor does Petitioner demonstrate cause and prejudice or a fundamental miscarriage of justice, which would allow review of this claim.  Accordingly, we are precluded from review and this claim must be denied.

## IV.   **CERTIFICATE OF APPEALABILITY**.

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue.

For all of the foregoing reasons, I make the following:

## RECOMMENDATION

AND NOW, this 30th day of October, 2008, IT IS RESPECTFULLY RECOMMENDED that Petitioner's Application for Stay in Abeyance should be DENIED.  IT IS FURTHER RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an evidentiary hearing.  There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.


BY THE COURT:


/s/ Henry S. Perkin
_____
HENRY S. PERKIN
United States Magistrate Judge